1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                   EASTERN DISTRICT OF WASHINGTON

7   LEE REED and LYNELLE REED,
                                        NO:  11-CV-0469-TOR
8                         Plaintiffs,
                                        ORDER GRANTING IN PART AND
9         v.                            DENYING IN PART DEFENDANTS'
                                        MOTION FOR SUMMARY
10  CITY OF ASOTIN and JAMES            JUDGMENT
    MILLER,
11
                          Defendants.
12

13        BEFORE THE COURT is Defendants' Motion for Summary Judgment

14  (ECF No. 28).  This matter was heard with oral argument on January 11, 2013.  Jay

15  P. Manon appeared on behalf of the Plaintiffs.  Michael E. McFarland, Jr. appeared

16  on behalf of the Defendants.  The Court has reviewed the motion, the response, and

17  the reply, and is fully informed.

18                            BACKGROUND

19        Plaintiff Lee Reed ("Plaintiff"), the former Chief of Police for the City of

20  Asotin Police Department, has sued the City of Asotin and its Mayor, James

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

Miller, for various causes of action arising from his separation from the police force in May 2009.  Defendants have moved for summary judgment on each of Plaintiff's claims.

FACTS

Plaintiff served as the Chief of Police of the City of Asotin Police Department from January 1, 2005, to May 14, 2009.  His duties in this position included making recommendations to the Mayor concerning the hiring, termination and discipline of police officers; assigning tasks and shifts to subordinates; evaluating the performance of subordinates; evaluating the department's training needs; ensuring departmental compliance with rules and regulations; developing departmental policies and procedures; assisting in the preparation of the department's budget; performing financial analysis and cost controls; evaluating complaints and grievances against officers; attending meetings of the City Council and Public Safety Committee; and meeting with public officials and members of the general public.  ECF No. 42 at ¶ 4.  In short, Plaintiff was "the face of the police department."  ECF No. 42 at ¶ 5.

Due to the small size of his department, Plaintiff was also required to "perform[] all police functions" and "act[] as a glorified patrol officer."  ECF No. 42 at ¶ 4.  His duties in this capacity included conducting investigations, performing traffic enforcement, and performing community service and/or

community policing.  ECF No. 42.  According to Plaintiff, these duties consumed 60% of his time.

From January 1, 2005 until September 10, 2008, the City of Asotin Police Department was staffed by Plaintiff and one other full-time officer.  On September 10, 2008, the City hired a third full-time officer.  ECF No. 42 at ¶7.  The hiring of this additional officer prompted the City to create a Civil Service Commission pursuant to RCW Chapter 41.12.  The Civil Service Commission was ratified by the City Council on October 27, 2008.  ECF No. 42 at ¶ 8.  On April 27, 2009, the City Council appointed three members of the public to serve as members of the Civil Service Commission.  ECF No. 42 at ¶ 10.

On May 14, 2009, Plaintiff tendered his resignation to the City of Asotin's mayor, Defendant James Miller, in lieu of being terminated.  The reasons for Plaintiff's resignation are not entirely clear; it appears, however that it was prompted, at least in part, by complaints which had been lodged against him by members of the public.  Plaintiff's dissatisfaction with Defendant Miller's level of supervision may also have played a role in his decision to resign.  In any event, the reasons why Plaintiff resigned are not directly at issue.  What is at issue is whether Plaintiff was required to seek redress before the Civil Service Commission before filing this lawsuit.  It is undisputed that he did not do so.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3

DISCUSSION

A court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" within the meaning of Rule 56(a) if it might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A "genuine dispute" over any such fact exists only where there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party.  *Id.* at 248.

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party has the burden of proof at trial, the moving party need only demonstrate an absence of evidence to support the non-moving party's claims.  *Id.* at 325.  The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  In deciding whether this standard has been satisfied, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 327, 378 (2007).

**A. Minimum Wage Act Claim**

Defendants seek summary judgment on Plaintiff's claim for violation of Washington's Minimum Wage Act ("MWA") on the ground that Plaintiff is statutorily exempt from the MWA's wage and hour provisions by virtue of having been employed in an administrative and/or executive capacity.  Plaintiff, for his part, maintains that the administrative and executive exemptions do not apply because he spent 60% of his time performing routine police activities such as writing tickets, making arrests, and patrolling streets.  Lee Aff., ECF No. 36, at ¶ 1.

The MWA excludes from its definition of an "employee" anyone who is "employed in a bona fide executive, administrative, or professional capacity . . . as those terms are defined and delimited by rules of the director [of the Department of Labor and Industries]."  RCW 49.46.010(3)(c).  The Department of Labor and Industries, in turn, has promulgated regulations which specify when the administrative and executive exemptions apply.  For the reasons discussed below, the Court finds that both exemptions apply.

1. Administrative Exemption

The administrative exemption is set forth in WAC 296-128-520.  This regulation provides, in relevant part:

The term "individual employed in a bona fide . . . administrative . . . capacity" in RCW 49.46.010[(3)(c)] shall mean any employee:

(1) Whose primary duty consists of the performance of office or non-manual field work directly related to management policies or general business operations of his employer or his employer's customers; [and]

\*   \*   \*   \*   \*

(3) Who customarily and regularly exercises discretion and independent judgment; and

    (a) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined in this regulation), or

    (b) Who performs under only general supervision work along specialized or technical lines requiring special training, experience or knowledge, or

    (c) Who executes under only general supervision special assignments and tasks; and

(4) Who does not devote more than 20 percent . . . of his hours worked in the work week to activities which are not directly and closely related to the performance of the work described in paragraphs (1) through (3) of this section; and

    (a) Who is compensated for his services on a salary or fee basis at a rate of not less than $155 per week exclusive of board, lodging, or other facilities; or

    (b) Who, in the case of academic administrative personnel is compensated for his services as required by paragraph (4)(a) of this section, or on a salary basis which is at least equal to the entrance salary for teachers in the school system, educational establishment, or institution by which he is employed: Provided, That an employee who is compensated on a salary or fee basis at a rate of not less than $250 per week (exclusive of board, lodging, or other facilities), and whose primary duty

> consists of the performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers; which includes work requiring the exercise of discretion and independent judgment, shall be deemed to meet all of the requirements of this section.

WAC 296-128-520.

The Department of Labor and Industries has also issued a policy statement which is intended to clarify the scope of this regulation.  *See* Wash. Dep't of Labor and Industries, *Exemption from Minimum Wage and Overtime Requirements for Administrative Positions*, Administrative Policy ES.A.9.4 (June 24, 2005).  This policy statement contains a "short test" for applying WAC 296-128-520:

> The administrative exemption contains a special proviso in the latter part of WAC 296-128-520(4)(b) after the word "Provided" for employees who are compensated on a salary or fee basis at a rate of at least $250 per week exclusive of board, lodging, or other facilities. Under this proviso, the requirements for exemption will be deemed to be met by an employee who 1) receives the $250 per week on a salary or fee basis; **2) the employee's primary duty consists of the performance of office or nonmanual work directly related to management policies or general business operations of the employer or the employer's customers**; and 3) duties include work requiring the exercise of discretion and independent judgment.  If an employee qualifies for exemption under this proviso, it is not necessary to test the employee's qualifications in detail under the long test.

Administrative Policy ES.A.9.4 at ¶ 3, 5, 9 (emphasis added).

In this case, the parties disagree about whether Plaintiff satisfies the "primary duty" element of the test given that he spent 60% of his time

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 7

1  performing "routine police work."  Fortunately, the policy statement issued

2  by the Department of Labor and Industries provides substantial guidance on

3  this issue:

4      **How to Determine Primary Duty.**  Primary duty must be based on
       all facts in the particular case.  Generally, 50% is a good rule of
5      thumb[,] but is not the sole test.  There may be situations where the
       employee does not spend over 50% of his or her time in
6      administrative duties, but [will] still be exempt if other pertinent
       factors support such a conclusion.  <u>Pertinent factors might include the</u>
7      <u>relative importance of the administrative function compared with</u>
       <u>other duties performed</u> in which the employee exercises discretionary
8      powers, freedom from supervision, etc.

9                          *   *   *   *   *

10     **Directly Related to Management Policies or General Business
       Operations of the Employer or Employer's Customers.**  This
11     phrase describes those types of activities relating to the administrative
       operations of a business as distinguished from production or[] sales
12     work in a retail or service establishment.  In addition to describing the
       types of activities, the phrase limits the exemption to <u>persons who</u>
13     <u>perform work of substantial importance to the management or</u>
       <u>operation of the business of his employer</u> or his employer's
14     customers.  This must be considered on a case-by-case basis to
       determine [whether] this applies.

15                         *   *   *   *   *

16
       "Directly related to management policies or general business
17     operations" <u>includes those who participate in the formulation of</u>
       <u>management policies</u>, or in the operation of the business as a whole,
18     and <u>includes those whose work affects policy or whose work it is to</u>
       <u>execute and carry the policy out.</u>

19
    Administrative Policy ES.A.9.4 at ¶ 5, 9 (underlined emphasis added).

20

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8

As illustrated by the excerpts above, the Department of Labor and Industries has interpreted WAC 296-128-520 to apply to employees who play a significant role in creating and/or enforcing management policies.  Although the precise amount of time an employee spends performing management-related work versus non-management-related work is a relevant consideration, it is not dispositive.  As articulated by the Department of Labor and Industries, the most important consideration is the relative importance of the employee's management-related responsibilities to the functioning of the employer as a whole.  This construction of the regulation is entitled to substantial deference by this Court.  *See Silverstreak, Inc. v. Washington State Dep't of Labor and Indus.*, 159 Wash.2d 868, 884-85 (2007) ("[W]e will give great deference to an agency's interpretation of its own properly promulgated regulations, 'absent compelling indication' that the agency's regulatory interpretation conflicts with legislative intent or is in excess of the agency's authority.  We give this high level of deference . . . because the agency has expertise and insight gained from administering the regulation that we, as the reviewing court, do not possess.").

Here, Plaintiff's management-related duties were clearly central to the successful management and operation of the City of Asotin Police Department.  As the Chief of Police, Plaintiff was responsible for, *inter alia*, developing policies and procedures for the police department; organizing and assigning tasks to

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9

subordinates; issuing oral and written directives to subordinates; evaluating the performance of subordinates; making recommendations to the mayor concerning the promotion and discipline of subordinates; evaluating the department's training needs; preparing periodic reports of the department's activities for the mayor; participating in the preparation of police department budgets; performing financial analysis regarding cost controls; attending meetings of the City Council and the public safety committee; and meeting with elected or appointed officials and other members of the general public.  ECF No. 42 at 2-4.  Although performing these duties accounted for only 40% of Plaintiff's work hours (presumably due to the small size of his department), there is no dispute that Plaintiff was singularly responsible for managing and operating the department.  Accordingly, Plaintiff falls within the administrative exemption.

2. <u>Executive Exemption</u>

The executive exemption is set forth in WAC 296-128-510.  This regulation provides, in relevant part:

> The term "individual employed in a bona fide executive . . . capacity" in RCW 49.46.010[(3)(c)] shall mean any employee:
>
> > (1) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and
> >
> > (2) Who customarily and regularly directs the work of two or more other employees therein; and

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 10

(3) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(4) Who customarily and regularly exercises discretionary powers; and

(5) Who does not devote more than 20 percent . . . of his hours worked in the work week to activities which are not directly and closely related to the performance of the work described in paragraphs (1) through (4) of this section . . .; and

(6) Who is compensated for his services on a salary basis at a rate of not less than $155 per week exclusive of board, lodging, and other facilities: Provided, That an employee who is compensated on a salary rate of not less $250 per week (exclusive of board, lodging, or other facilities), and whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all of the requirements of this section.

WAC 296-128-510.

As with the administrative exemption, the Department of Labor and Industries has issued a policy statement which is intended to clarify the scope of this regulation.  *See* Wash. Dep't of Labor and Industries, *Exemption from Minimum Wage and Overtime Requirements for Executive Positions*, Administrative Policy ES.A.9.3 (June 24, 2005).  This policy statement contains a "short test" for applying WAC 296-128-510:

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 11

The executive exemption contains a special proviso in the latter part of WAC 296-128-510(6) after the word "Provided" for employees who are compensated on a salary basis at a rate of at least $250 per week exclusive of board, lodging or other facilities. Under this proviso, the requirements for exemption will be deemed to be met by any employee who 1) receives the $250 per week in salary; **2) his or her primary duty consists of the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision of the enterprise**, and 3) includes the customary and regular direction of the work of two or more employees. If an employee qualifies for exemption under this proviso, it is not necessary to test the employee's qualifications in detail under the long test.

Administrative Policy ES.A.9.3 at ¶ 3 (emphasis added).

Plaintiff satisfies the second element of this test for many of the same reasons that he satisfied the second element of the administrative exemption test. As discussed above, Plaintiff's management-related duties were crucial to the successful management and operation of the Asotin Police Department. Although his management-related duties did not consume a majority of his time, they were nevertheless his "primary duties" within the meaning of WAC 296-128-510. *See* Administrative Policy ES.A.9.3 at ¶ 4 (explaining that "the relative importance of the [employee's] managerial duties as compared with other types of duties" is a pertinent factor when considering whether an employee who spends less than 50% of his or her time performing managerial duties qualifies for the executive

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 12

exemption). Accordingly, the executive exemption applies.[1]  Defendants' motion

for summary judgment on Plaintiff's MWA claim is granted.

**B. Violation of Civil Service Rules Claim (Wrongful Discharge)**

Plaintiff's Amended Complaint lists a cause of action for "Wrongful

Termination Violation of Civil Service Rules."  ECF No. 8 at 4.  The precise

nature of this claim is unclear.  On one hand, the Amended Complaint alleges that

Defendant City of Asotin violated RCW Chapter 41.12 by failing to create a Civil

Service Commission Committee within ninety days of hiring a third police officer

to its police force.  *See* ECF No. 8 at ¶¶ 23-24.  On the other hand, the Amended

Complaint alleges that Defendants violated the Civil Service Rules by failing to

afford him a civil service hearing prior to his termination.  *See* ECF No. 8 at ¶¶ 28,

32.  Plaintiff's memorandum in opposition to the instant motion further obfuscates

the nature of his claim by referencing a claim for wrongful termination in violation

of public policy under Washington common law.  *See* ECF No. 34 at 4.  In light of

this uncertainty, the Court will limit its analysis to the issues specifically raised by

---

[1] Although neither party has raised the issue, it appears that the executive

exemption would only apply *after* September 10, 2008, the date on which the

Asotin Police Department hired Officer Mike McGowan, raising the number of

Plaintiff's subordinates from one to two.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 13

1  Plaintiff in opposition to Defendants' motion for summary judgment: (1) whether

2  Plaintiff was subject to the Asotin Civil Service rules (including the requirement

3  that he exhaust his administrative remedies prior to filing suit); and (2) if so,

4  whether he has a viable claim for wrongful discharge in violation of public policy

5  (a claim to which the administrative exhaustion requirement does not apply).

6      1.  <u>Plaintiff Was Subject to the Civil Service Rules</u>

7          Plaintiff asserts that there is a genuine issue of material fact as to whether he

8  was subject to the Asotin Civil Service rules, and, by extension, required to

9  exhaust his administrative remedies.  His lone argument in support of this assertion

10 is that the Asotin City Attorney, Scott Broyles, advised the Asotin City Council

11 during a meeting on November 10, 2008, that Plaintiff would continue to be an at-

12 will employee following the creation of the Asotin Civil Service Board.  ECF No.

13 34 at 4; ECF No. 38 at 7, ¶ 5(b).  Plaintiff acknowledges that Mr. Broyles'

14 statement was "contrary to law," but maintains that it excuses his failure to exhaust

15 his administrative remedies before the Civil Service Commission.  ECF No. 34 at

16 4-5.

17         This argument is unavailing.  As Defendants correctly note, the application

18 of RCW Chapter 41.12 to Plaintiff is a question of law rather than a question of

19 fact.  Here, the applicable law is clear: as a full-time employee of a police

20 department with fewer than six commissioned officers, Plaintiff was a member of

the classified civil service.  RCW 41.12.050(1) ("For police departments with

fewer than six commissioned officers, including the police chief, the classified

civil service and provisions of this chapter includes all full paid employees of the

department of the city, town, or municipality.").  Accordingly, Plaintiff was

required to exhaust his administrative remedies before the Asotin Civil Service

Commission prior to filing this lawsuit.  *Allstot v. Edwards*, 116 Wash. App. 424,

430-31 (2003).  Given that he did not do so, Defendants are entitled to summary

judgment.

      2.  <u>Plaintiff Does Not Have a Viable Wrongful Discharge Claim</u>

      Plaintiff further asserts, apparently for the first time, that he was not required

to exhaust his administrative remedies before the Asotin Civil Service Commission

because he was wrongfully discharged in violation of public policy.  *See* ECF No.

34 at 4 ("[W]hen a civil service commission has no mechanism for resolving

claims for wrongful constructive discharges, a claimant will not be required to

exhaust administrative remedies").  While it is true that Plaintiff was not required

to exhaust his administrative remedies before filing a claim for wrongful discharge

in violation of public policy, *see Allstot*, 116 Wash. App. at 433, there are no

genuine issues of material fact to support such a claim in this case.

      To prevail on his wrongful discharge claim, Plaintiff must prove "(1) the

existence of a clear public policy (the *clarity* element); (2) that discouraging the

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 15

conduct in which he engaged would jeopardize the public policy (the *jeopardy* element); (3) that the public-policy-linked conduct caused the dismissal (the *causation* element); and, finally, (4) that the defendant has not offered an overriding justification for the dismissal (the *absence of justification* element)." *Cudney v. ALSCO, Inc.*, 172 Wash.2d 524, 529 (2011) (emphasis in original) (internal quotations, citations and modifications omitted).

Further, because Plaintiff resigned his employment (as opposed to having been formally terminated), he must prove that he was constructively discharged. *See Wahl v. Dash Point Family Dental Clinic, Inc.*, 144 Wash. App. 34, 43 (2008) ("A cause of action for wrongful discharge in violation of public policy may be based on either express or constructive discharge.") (internal quotation marks omitted). To prove constructive discharge, Plaintiff must establish that (1) Defendant engaged in deliberate conduct which made his working conditions intolerable; (2) a reasonable person in his position would have been forced to resign; (3) he resigned solely because of intolerable working conditions; and (4) he suffered damages. *Allstot*, 116 Wash. App. at 433; *Short v. Battle Ground Sch. Dist.*, 169 Wash. App. 188, 206 (2012). Intolerable working conditions may arise from "aggravating circumstances or a continuous pattern of discriminatory treatment" on the part of the employer. *Allstot*, 116 Wash. App. at 433. "Whether working conditions are intolerable is a question of fact and is not subject to

summary judgment unless there is no competent evidence to establish the claim." *Id.*

Here, Plaintiff contends that his working conditions were rendered intolerable by Defendant Miller's "micromanaging of the police department," and by his "having to be on call 24/7." ECF No. 34 at 4. Contrary to Plaintiff's assertions, these two circumstances do not amount to "aggravating circumstances or a continuous pattern of discriminatory treatment" for purposes of establishing intolerable working conditions. *See Allstot*, 116 Wash. App. at 433. First, there is no evidence that this treatment of Plaintiff was *discriminatory* in nature. Rather, from the evidence presented, it is reasonable to assume that a significant amount of oversight by the Mayor and/or burdensome on-call duties were simply attendant to Plaintiff's position as the Chief of Police. Similarly, these circumstances are by no means "aggravating." Again, being "micromanaged" by a top elected official and being "on call 24/7" are simply some of the unpleasant realities of serving as the Chief of Police in a small community. The Court finds that Plaintiff has failed to present competent evidence in support of his wrongful discharge claim and that no rational jury could find in his favor on the facts presented. *Allstot*, 116 Wash. App. at 433. Accordingly, Defendants are entitled to summary judgment.

**C. Washington Public Records Act Claim**

Defendants seek summary judgment on Plaintiff's claim under the Washington Public Records Act ("PRA") on two separate grounds. First, Defendants assert that Plaintiff failed to file the claim within the two year "catch-all" statute of limitations applicable to such a claim. Second, Defendants argue that the documents at issue were beyond the scope of the materials described in Plaintiff's original public records request. For the reasons discussed below, both arguments fail.

1. <u>Statute of Limitations</u>

The statute of limitations on a PRA claim in Washington is either one or two years, depending upon the nature of the claim. A one-year statute of limitations applies to claims which are based upon (1) a state agency's claim of exemption from the PRA's disclosure requirements; or (2) an agency's "last production of a record on a partial or installment basis." RCW 42.56.550(6). A two-year statute of limitations applies to all other PRA claims. *Tobin v. Worden*, 156 Wash. App. 507, 514 (2010); *Johnson v. State Dep't of Corr.*, 164 Wash. App. 769, 777 (2011). Defendants concede that the two-year statute of limitations applies in this case. ECF No. 29 at 19.

Here, there is no dispute that Plaintiff failed to file the instant lawsuit within two years of Defendant's June 16, 2009 response to his PRA request. However,

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 18

Plaintiff maintains that the two-year statute of limitations on his claim was effectively tolled until approximately March or April of 2011,[2] when he discovered that Defendant had failed to produce the documents at issue.  The Court agrees.  Although there do not appear to be any reported cases directly applying the so-called "discovery rule" to PRA claims, applying the rule to the circumstances presented here is entirely reasonable.  Plaintiff had no reason to suspect that any documents had been omitted from Defendant's June 16th disclosure until he stumbled upon *additional* documents obtained from Defendant by a third party.  By logical extension, Plaintiff could not have filed the instant PRA claim until he discovered that these additional documents existed and that they had not been produced.  Accordingly, the Court concludes that the two-year statute of limitations began to run sometime after March 18, 2011.  Plaintiff's PRA claim, which was filed on March 9, 2012, is therefore timely.

---

[2] The record does not establish the precise date on which Plaintiff discovered the existence of the two documents in question.  Plaintiff testified during his deposition that he discovered the documents in approximately March or April of 2011 after Defendant produced them to a third party on March 18, 2011.  *See* ECF No. 38 at Tr. 172-78.

1        2. Scope of PRA Request

2        Plaintiff submitted the following PRA request to the City of Asotin on May

3    20, 2009:

4        We ask that you provide copies of all complaints made against
         office[r] Reed, all internal investigation reports, all training records,
5        all evaluations and any other report or tangible inner office notes
         made regarding Officer Reed including but not limited to the
6        Investigative report of the outside investigator from Walla Walla.

7    ECF No. 32-6.

8        The City responded to Plaintiff's request on June 16, 2009, by submitting

9    115 pages of responsive documents.  ECF No. 42 at ¶ 14.  The City's response,

10   however, did not include two email messages dated May 11, 2009, and May 20,

11   2009.  ECF No. 42 at ¶ 20.  The May 11th email is a message authored by City of

12   Asotin Mayor Defendant Jim Miller.  It reads, in pertinent part:

13       I met with [Shannon] Grow to hear her concerns [about Plaintiff][3] a
         few weeks ago.  Ms. Grow apparently wishes to add to her complaint.

14   _____

15   [3] Although this message does not specifically reference Plaintiff, it was written in

16   response (*i.e.*, was a "reply" to) an email from Ellen Boatman to Mayor Miller

17   which reads: "When you get a chance, give me a call concerning Shannon Grow,

18   the lady you met with *concerning Lee*."  ECF No. 40-1 (emphasis added).  When

19   read in this context, Defendant Miller's response can be understood to reference

20   Plaintiff.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 20

> I wish to avoid the appearance [of] special access and would like one
> of the committee members (Vikki or Mervin) to meet with myself and
> Ms. Grow. We can discuss this matter further this evening. This
> may be one for executive session . . . [City Attorney] Scott [Broyles]
> can advise.

ECF No. 40-1.

The May 20th email is a follow-up message from City of Asotin Clerk /

Treasurer Ellen Boatman to Defendant Miller. It reads:

> Jim – Vikki is ill and cannot make the 4:00 pm meeting today with
> Shannon Grow. Would you like me to contact Mervin and see if he
> can make it or would you like me to reschedule?

Defendant Miller responded:

> Please reschedule . . . ? Tuesday. You may inform her of [Plaintiff's]
> departure if she still sees a need of meeting.

ECF No. 40-1.

Defendants contend that these two emails are beyond the scope of Plaintiff's

public records request. The Court disagrees. Contrary to Defendants' assertions,

these emails are not "simply scheduling notes concerning meetings." ECF No. 39

at 15. Rather, these emails memorialize the fact that a citizen who had previously

complained to the City about Plaintiff wished to either make additional allegations

or expand the scope of her existing complaint. Although the email is not a

complaint against Plaintiff in and of itself, it does memorialize the fact that an

additional or new complaint had been or was about to be lodged. It also qualifies

as a "tangible inner office note[] made regarding Officer Reed." As such, the

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 21

email falls within the scope of Plaintiff's records request and should have been produced.  Defendants' motion for summary judgment on this claim is denied.

### D. FLSA, FOIA, Breach of Contract, and IIED Claims

Plaintiff indicated in his briefing that he is no longer pursuing claims under the Fair Labor Standards Act or the Freedom of Information Act.  ECF No. 34 at 2. His counsel further indicated at oral argument that Plaintiff has abandoned his claims for breach of contract and intentional infliction of emotional distress. Accordingly, these claims will be dismissed.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendants' Motion for Summary Judgment (ECF No. 28) is **GRANTED in part** and **DENIED in part**.  Plaintiff's claim under the Washington Public Records Act will proceed to trial.  The following claims are dismissed with prejudice:

1.  Minimum Wage Act;

2.  Violation of Civil Service Rules (Wrongful Discharge);

3.  Fair Labor Standards Act;

4.  Freedom of Information Act;

5.  Breach of Contract; and

6.  Intentional Infliction of Emotional Distress.

1    The District Court Executive is hereby directed to enter this Order and

2    provide copies to counsel.

3        **DATED** this 11th day of January, 2013.

4                        *s/ Thomas O. Rice*

5                    THOMAS O. RICE
                 United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 23